UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LETICIA STIDHUM and DAVID MANRIQUE, on their own behalf and on behalf of others similarly situated,

                    Case No.: 1:19-cv-1625 (ARR) (SMG)

                    **Plaintiffs,**

   - against -

161-10 HILLSIDE AUTO AVE., LLC d/b/a Hillside Auto Outlet, HILLSIDE AUTOMALL INC d/b/a Hillside Auto Mall, ISHAQUE THANWALLE, and RONALD M. BARON,

                    **Defendants.**
------------------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR ATTORNEYS' FEES ARISING OUT OF
<u>PLAINTIFFS' VOLUNTARY DISMISSAL OF THIS CASE WITHOUT PREJUDICE</u>**


**MILMAN LABUDA LAW GROUP PLLC**

Emanuel Kataev, Esq.
3000 Marcus Ave., Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ....................................................................................................1

**FACTS** ..........................................................................................................................................1

**ARGUMENT** ................................................................................................................................2

**CONCLUSION** ............................................................................................................................6

## TABLE OF AUTHORITIES

**Cases**

Adams v. N.Y. State Educ. Dep't,
　　630 F. Supp. 2d 333 (S.D.N.Y. 2009) ................................................................................ 3

Ames v. Clifford,
　　No. 94-CIV.-6712, 1996 WL 563098 (S.D.N.Y. Oct. 2, 1996) ........................................... 4

Andrews v. America's Living Ctrs., LLC,
　　827 F.3d 306 (4th Cir. 2016) ............................................................................................... 3

Carroll v. E One Inc,
　　893 F.3d 139 (3d Cir. 2018) ................................................................................................ 5

Colombrito v. Kelly,
　　764 F.2d 122 (2nd Cir. 1985) ..................................................................................... 2, 3, 4

Esposito v. Piatrowski,
　　223 F.3d 497 (7th Cir. 2000) ............................................................................................... 3

Gap, Inc. v. Stone Intl Trading, Inc.,
　　169 F.R.D. 584 (S.D.N.Y. 1997) ..................................................................................... 2, 4

Gap, Inc. v. Stone Intl Trading, Inc.,
　　125 F.3d 845 (2d Cir. 1997) ................................................................................................ 4

Horowitz v. 148 S. Emerson Assoc. LLC,
　　888 F.3d 13 (2d Cir. 2018) .................................................................................................. 3

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,
　　146 F.3d 66 (2d Cir. 1998) ............................................................................................ 2 n. 1

Jewelers Vigilance Committee, Inc. v. Vitale, Inc.,
　　No. 90-CIV.-1476, 1997 WL 582823 (S.D.N.Y. Sept. 19, 1997) ....................................... 2

John Evans Sons, Inc. v. Majik-Ironers, Inc.,
　　95 F.R.D. 186 (E.D. Pa. 1982) ............................................................................................ 3

Kramer v. Time Warner Inc.,
　　937 F.2d 767 (2d Cir. 1991) .......................................................................................... 2 n. 1

Mercer Tool Corp. v. Friedr. Dick GmbH,
　　179 F.R.D. 391, 395 (E.D.N.Y. 1998) ............................................................................. 2, 4

Shi Ming Chen v Hunan Manor Enter., Inc.,
    No. 17-CIV.-802 (GBD) (GWG), 2021 WL 2282642 (S.D.N.Y. Jun. 4, 2021) .............. 11

Simeone v. First Bank Nat'l Ass'n,
    971 F.2d 103 (8th Cir. 1992) ........................................................................................ 3

Smoot v. Fox,
    353 F.2d 830 (6th Cir. 1965) ........................................................................................ 3

Smoot v. Fox,
    384 U.S. 909 (1966) ...................................................................................................... 3

**Rules**

Fed. R. Civ. P. 12 ................................................................................................................ 4

Fed. R. Civ. P. 41 ................................................................................................. 1, 2, 3, 5, 6

**Other Sources**

5 J. Moore, Moore's Federal Practice, 41.06 (2d. ed. 1948 & Supp. 1984) ...................... 2

8 Moore's Fed. Prac. § 41.70[1] (3d ed. 2016) ................................................................. 3

9 C. Wright & A. Miller, Federal Practice & Procedure §2366 (1971 & Supp. 1984) .................. 2

## **PRELIMINARY STATEMENT**

Plaintiffs Leticia Stidhum and David Manrique (hereinafter "Plaintiffs"), together with their counsel, improperly filed this case in federal court, requiring Defendants to spend time, money, and resources defending this lawsuit when it should have never been filed in the first place.

After Defendants filed their letter motion seeking a pre-motion conference in anticipation of their motion to dismiss, Plaintiffs waved the white flag, conceded they had no business filing this complaint in the first instance, and voluntarily withdrew their claims without prejudice.

Plaintiff then simply filed another action in state court. The Second Circuit has held that the voluntary withdrawal of a case without prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") entitles Defendants to an award of attorneys' fees, especially where the same claims are later pursued in a subsequent forum. The facts of this case fall squarely within the ambit of a circumstance warranting the award of attorneys' fees. As set forth further below, Defendants respectfully request the instant motion for fees, and a stay of the state court action pending payment of the fees, be granted in its entirety.

## **FACTS**

Plaintiff commenced this case on October 7, 2020, and Defendants appeared by counsel on March 22, 2019. See Docket Entry 1. On July 25, 2019, after earlier appearing, Defendants filed a letter motion for a pre-motion conference in anticipation of their motion to dismiss under Rule 12(b)(6) on the grounds that Plaintiff's wage-and-hour claims failed due to, *inter alia*, an overtime exemption for car salespeople such as Plaintiff. See Docket Entry 15. In response, Plaintiff withdrew his complaint and filed a notice of voluntary dismissal on or about August 12, 2019. See Docket Entries 17-18.

On October 13, 2019, just two (2) months later, Plaintiff commenced an action in the Supreme Court of the State of New York, Queens County asserting causes of action based upon the same events complained of in the complaint filed in this case. See Index No.: 655970/2019 (New York County Supreme Court) (hereinafter the "State Court Action").[1]

## ARGUMENT

Rule 41 allows the dismissal of a complaint "by court order, on terms that the court considers proper." See Fed. R. Civ. P. 41(a)(2). "Although voluntary dismissal without prejudice is not a matter of right, the presumption in this circuit is that a court should grant a dismissal pursuant to Rule 41(a)(2) absent a showing that defendants will suffer substantial prejudice as a result." See Gap, Inc. v. Stone Intl Trading, Inc., 169 F.R.D. 584, 588 (S.D.N.Y. 1997) (citations omitted).

The Second Circuit held that attorneys' fee awards are often made when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2). See Colombrito v. Kelly, 764 F.2d 122, 133 (2nd Cir. 1985); see also 5 J. Moore, Moore's Federal Practice, 41.06, at 41-74 (2d. ed. 1948 & Supp. 1984); 9 C. Wright & A. Miller, Federal Practice & Procedure §2366, at 177-80 (1971 & Supp. 1984). Where a court grants dismissal without prejudice under Rule 41(a)(2) to Plaintiff, Defendants are entitled to costs and attorneys' fees incurred to date in the defense of the case. See Mercer Tool Corp. v. Friedr. Dick GmbH, 179 F.R.D. 391, 395 (E.D.N.Y. 1998) (quoting Jewelers Vigilance Committee, Inc. v. Vitale, Inc., No. 90-CIV.-1476, 1997 WL 582823, *4 (S.D.N.Y. Sept. 19, 1997) ("Courts often grant fee awards when a plaintiff dismisses a suit without prejudice under Rule 41(a)(2)").

---

[1] Courts may take judicial notice of the existence of state court documents. See Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).

2

"The purpose of such awards is generally to reimburse the defendant for the litigation costs incurred, in view of the risk (often the certainty) faced by the defendant that the same suit will be refiled and will impose duplicative expenses upon him." See Colombrito, 764 F.2d at 133; see also Smoot v. Fox, 353 F.2d 830, 833 (6th Cir. 1965), cert. denied, 384 U.S. 909 (1966); John Evans Sons, Inc. v. Majik-Ironers, Inc., 95 F.R.D. 186, 191 (E.D. Pa. 1982). The central consideration contemplated in Colombrito is the "risk of relitigation of the issues." See 764 F.2d at 134.

Rule 41 also provides that if a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (i) may order the plaintiff to pay all or part of the costs of that previous action; and (ii) may stay the proceedings until the plaintiff has complied. See Fed. R. Civ. P. 41(d). The Second Circuit has held that Rule 41(d)'s purpose is clear and undisputed: "to serve as a deterrent to forum shopping and vexatious litigation." See Horowitz v. 148 S. Emerson Assoc. LLC, 888 F.3d 13, 23 (2d Cir. 2018) (citing Andrews v. America's Living Ctrs., LLC, 827 F.3d 306, 309 (4th Cir. 2016) (quoting Simeone v. First Bank Nat'l Ass'n, 971 F.2d 103, 108 (8th Cir. 1992) and citing Esposito v. Piatrowski, 223 F.3d 497, 501 (7th Cir. 2000)); Adams v. N.Y. State Educ. Dep't, 630 F. Supp. 2d 333, 343 (S.D.N.Y. 2009); 8 Moore's Fed. Prac. § 41.70[1] (3d ed. 2016)).

Crucially, the Second Circuit has held that district courts have the authority to award attorneys' fees as "costs" under Rule 41(d). See Horowitz, 888 F.3d at 23 ("We thus have no difficulty in concluding that Rule 41(d) evinces an unmistakable intent for a district court to be free, in its discretion, to award attorneys' fees as part of costs").

Here, the Plaintiff improperly filed this case in federal court, forcing Defendants to defend same, and is already pursuing subsequent litigation by virtue of the October 2019 State Court Action. Plaintiff must be Ordered to pay attorneys' fees pursuant to Rule 41 first.

3

Indeed, Plaintiff should not have filed this case in federal court in the first place. See Gap, Inc. v. Stone Int'l Trading, Inc., 169 F.R.D. 584, 589 (S.D.N.Y.), aff'd1 125 F.3d 845 (2d Cir. 1997) (the Gap's offer of a covenant not to sue obviates the need to reimburse the defendants on this ground since there is no possibility of relitigation).  Another purpose of the Colombrito rule is "generally to reimburse the defendant for the litigation costs incurred in view of the risk faced by the defendant that the same suit will be refiled and will result in the imposition of duplicative expenses." See The Gap Inc., 169 F.R.D. at 589. As set forth herein, Defendants spent time and resources litigating this case to have it voluntarily dismissed, only to be met with the State Court Action thereafter.  Indeed, Plaintiff has already filed the State Court Action against the Defendants with his October 2019 lawsuit which will require Defendants to duplicate work and expenses.  To add insult to injury, Plaintiffs filed in the wrong venue and this required even further litigation.  Thus, this weighs in favor of an award of fees and costs.

Further, fee awards generally reimburse the defendant for expenses incurred in preparing work product that will not be useful in a second contemplated action.  See Mercer Tool Corp., 179 F.R.D. at 396; see also Ames v. Clifford, No. 94-CIV.-6712, 1996 WL 563098, *1 (S.D.N.Y. Oct. 2, 1996). Here, Defendants have incurred expense in defending this case and there will be attorney work product which would be no longer useful in subsequent litigation of the same claims given that the federal claims are no longer being pursued. Additionally, subsequent litigation will be in state court and the work done in the case at bar consisted heavily of federal procedural law: (1) legal research and drafting of a motion to dismiss pursuant to Rule 12; and (2) legal research and drafting of this motion.  Further, courts have not required a showing of vexatious conduct for an award of attorney's fees predicated on a voluntary dismissal without prejudice. See Mercer Tool Corp., 179 F.R.D. at 396 (awarding fees absent finding of bad faith or vexatious conduct).

Nevertheless, the risks of relitigation and duplicative costs, as well as vexatious conduct by Plaintiff is undeniable as Plaintiff has acted in bad faith in litigating his claims. Defendants must be protected from Plaintiffs' vexatious pattern of transparent attempts to relitigate their claims in a more favorable forum. See, e.g., Carroll v. E One Inc, 893 F.3d 139, 152 (3d Cir. 2018) ("In cases like the one at hand, where counsel has made a habit of filing essentially identical claims in multiple jurisdictions, and has voluntarily dismissed those claims after their opposing party (and the judiciary) have incurred substantial costs, a district court may, in its discretion, give weight to such facts when considering terms of dismissal under Rule 41(a)(2). To hold otherwise would be to permit counsel to frivolously expose their adversaries to unnecessary litigation costs. We will not require district courts to wear blinders when exercising the broad discretion afforded them under Rule 41(a)(2)").

Upon filing the instant lawsuit in this case, Defendants placed Plaintiff on notice that his claims lack merit. Plaintiff then re-asserted his claims in the State Court Action after seeing the lack of merit in this case. See NYSCEF Docket Entry 12 of the State Court Action ("I decided to abandon the federal claims. 'Who needs them?' she and I agreed") (referring to Plaintiff's counsel in the State Court Action as himself and Plaintiff's counsel in this action as "she"). Indeed, this statement shows Plaintiff's cavalier attitude towards filing lawsuits. After it became clear that his likelihood of success in federal court is virtually null, Plaintiff sought to withdraw this federal case and has continued the litigation in the State Court Action.

Defendants have incurred unnecessary expense by way of attorneys' fees and costs in defending this litigation and ought to be reimbursed according to Second Circuit law. It further indicates Plaintiff's decision to engage in vexatious litigation and forum shopping. This is exactly the type of conduct which calls for an award of attorneys' fees and costs under Rule 41.

Due to the certain risk of relitigation and duplicative expense, this honorable Court should properly award Defendants costs and attorneys' fees. Accordingly, Defendants should be awarded reasonable attorneys' fees and costs in defending this case unnecessarily, and issue an Order staying the State Court Action until such time as Plaintiff complies and pays the attorneys' fee award.

Finally, this Court must consider Plaintiffs' counsel's repeated bad faith conduct throughout the federal court system. Indeed, just four (4) months ago, United States Magistrate Judge Gabriel W. Gorenstein of the Southern District of New York held, in finding that Troy Law was not adequate to serve as class counsel in a wage-and-hour case such as this one, that:

> Recently, the Second Circuit upheld the decertification of a class due to inadequate representation by Troy and Troy Law. See Jin v. Shanghai Original, Inc., 990 F.3d 251, 262 (2d Cir. 2021). In Jin, the district court had decertified the class five days before trial after counsel indicated it would call only two class members as witnesses despite "witness testimony" being "crucial to prove the [defendants'] liability." Id. at 255-56. In upholding the decertification, the Second Circuit found that "[t]he record [was] replete with counsel's shortcomings" including that Troy and Troy law (1) attempted numerous times to delay trial without any meritorious basis; (2) had the court reopen discovery to conduct twenty-eight depositions related to the [defendants'] alleged misconduct but conducted only three and failed to inform the court until over a month after they abandoned depositions; (3) repeatedly failed to submit a witness list that complied with [the district judge's] instructions; and (4) in its final revised list, indicated they would only call two class members as witnesses despite indications in the [joint pre-trial order] of the significance of class-member testimony. Id. at 263.
>
> …
>
> The derelictions described in Jin might by themselves have justified denial of the class certification motion here. But there is in fact evidence of other serious derelictions by Troy and Troy Law. To begin with, another judge has recently rejected Troy Law as class counsel. In Rodpracha v. Pongsri Thai Rest. Corp., 2021 WL 1733515 (S.D.N.Y. Mar. 22, 2021), the court found Troy Law to be

6

inadequate "to represent the putative class, either for settlement or trial, precluding class certification for either purpose." See id. at *2. The court noted a number of failings by an attorney for the firm, see id. at *1-2, and concluded "that, regardless of its professed level of experience in wage-and-hour cases, Troy Law has shown a tendency towards prejudicial neglect of its clients' interests." Id. at *2 (citations omitted). Rodpracha further noted that that this conclusion had been "expressed by other judges, in this district and elsewhere." Id. (citations omitted).

Apart from the extraordinary fact that courts in two separate cases have refused to allow Troy Law to serve as class counsel, other courts have imposed sanctions as a result of Troy's conduct or the conduct of attorneys at Troy Law. In Jianshe Guo v. A Canaan Sushi Inc., 2019 WL 1507900 (S.D.N.Y. Apr. 5, 2019), after counsel failed to file a "revised default judgment motion," id. at *2, the court dismissed the case for failure to prosecute, and imposed monetary sanctions against Troy, his associate Aaron Schweitzer, and another associate at Troy Law, id. at *3-5. The court observed that counsel has repeatedly failed to comply with this Court's deadlines, despite extensive experience with this Court and in this District. … Those failures have caused the Court and its staff to expend resources reminding counsel of its need to adhere to deadlines. See, e.g., …; Hu v. Tea Pot 88, Inc., No. 18-CV-12158, Docket No. 30; Luo v. Kaiyi Inc., No. 18-CV-3101, Docket No. 31. The Court also expended considerable time and effort reviewing Plaintiff's motion for default judgment (indeed, the Court suspects that it spent more time reviewing it than counsel spent preparing it) before concluding that the motion was so patently defective that it could grant Plaintiff no relief. … This meant that the Court's time reviewing the motion was wasted. To make matters worse, because counsel failed to file a revised motion for default judgment, all of its efforts to explain to counsel the specific ways in which the motion was defective were also wasted. Id. at *4.

Last year, a judge in another case imposed monetary sanctions against Troy and Schweitzer. See Guangqing Lin v. Teng Fei Rest. Grp. Inc., 2020 WL 264407 (S.D.N.Y. Jan. 17, 2020), reconsideration denied, 2020 WL 429128 (S.D.N.Y. Jan. 27, 2020). Lin explained that Troy Law failed to submit jointly proposed jury instructions, a jointly proposed verdict sheet, or exhibits in usable form, either by the Court-ordered deadline of December 20, 2019, or by counsel's belatedly requested extended deadline of December 26, 2019. This failure has persisted despite multiple calls from the Court inquiring about the status of the missing filings. The Court should not be forced to expend unnecessary time and staff resources

7

to solicit compliance with the deadlines it sets, and this Court's experience with Troy Law in this regard is apparently not unique. See Guo, 2019 WL 1507900, at *1 n.1 (collecting cases demonstrating that, "despite extensive experience with this Court and in this District," "[c]ounsel from Troy Law frequently fail to submit required filings to this Court until they are reminded to do so by the Court's staff"). Id. at *3. Lin required each attorney to pay $1000 as a civil sanction. Id. at *5.

In Panora v. Deenora Corp., 2021 WL 736414 (E.D.N.Y. Feb. 25, 2021), attorneys of Troy Law including Troy were sanctioned $2000 plus attorney's fees for sending out a collective action notice that had not been approved by the Court. Id. at *1-3. The Court found that "it was patently improper for plaintiff's counsel to send out a different notice than the one approved by the Court." Id. at *1. It noted that "[t]he reason for the bait-and-switch is clear: counsel wanted to induce more putative plaintiffs to join the action, but he knew that defense counsel would not consent to [the changes made] and that I might not approve them if challenged." Id. The court found that "[s]anctions [were] clearly in order" and referred to counsel's "bad faith." Id. at *3. The court's order also noted there had been "other misconduct" not even discussed in the sanction order. See id.

Courts have imposed sanctions on Troy Law on many other occasions. See Yi Mei Ke v. J R Sushi 2 Inc., 2021 WL 965037, at *1-3 (S.D.N.Y. Mar. 15, 2021) (imposing non-monetary sanctions against Troy Law after counsel failed "to take six party depositions," which the court had reopened discovery for 90 days to allow counsel to take, and counsel's only explanation was that they were "too busy"); Jianjun Chen v. WMK 89th St. LLC, 2020 WL 2571010, at *7-10 (S.D.N.Y. May 20, 2020) (imposing monetary sanctions against Troy Law after determining counsel had failed to properly serve defendant and made bad faith arguments that it had done so) (observing "Troy Law [had] ... played far too fast and loose with their ethical and professional responsibilities during the pendency of [the] litigation"); Chun Lan Guan v. Long Island Bus. Inst., Inc., 2019 WL 3807455, at *1 (E.D.N.Y. Aug. 13, 2019) (upholding the imposition of sanctions against Troy Law "because counsel failed three times to submit a draft joint pretrial order ... to Defendants' counsel that complied with [the] Court's individual rules, in accordance with the deadlines set by" the magistrate judge). The Court suspects that the vast majority of litigating attorneys go their entire careers without ever being sanctioned by a court. The fact that Troy and Troy Law have been sanctioned more than once would by itself provide evidence of their lack of adequacy to represent a class.

Even where Troy Law has successfully litigated a case, its performance has been found lacking. In <u>Yuajian Lin v. La Vie En Schezuan Rest. Corp.</u>, 2020 WL 1819941 (S.D.N.Y. Apr. 9, 2020), the court observed multiple deficiencies in counsel's representation, which it attributed to Troy as "the principal of Troy Law" and therefore decreased his hourly fee rate. <u>Id.</u> at *4-5. The court went into detail regarding Troy Law's performance throughout the litigation observing that the pre-trial management of [the] case by Troy Law was uneven at best, leading to a trial that was marked by inadequate preparation and organization. Even when the case was supposedly trial ready, the Court discovered problems in its development and posture, as [one] plaintiff ... had opted into the case with respect to his FLSA claims, but counsel had never sought leave to amend the pleading to add his NYLL claims (which [the plaintiff] nonetheless wished to present at trial), and as the Docket reflected that Defendants had actually never answered the operative complaint. Although the latter problem demonstrates neglect on Defendants' part, Plaintiffs nevertheless had a responsibility to ensure that their case was actually ready for trial, and it was not. Plaintiffs apparently did not even realize that either of these particular problems existed; rather, the Court raised (and researched) the issues itself, ultimately allowing Plaintiffs to present evidence on [plaintiff's] NYLL claims, and to move to amend their Second Amended Complaint, on the record, to conform to the evidence adduced at trial, <u>see</u> Fed. R. Civ. P. 15(b)(2), and permitting Defendants to file an untimely Answer, immediately before trial ….

As for the trial itself, the Court learned, in the middle of a cross-examination, that Troy Law had misrepresented the content of a witness affidavit (which had been submitted in lieu of live direct testimony). Specifically, counsel had represented to the Court that two sworn versions of the affidavit (one that was in English only and another that was in both Mandarin and English) were substantively identical, when they apparently were not. Upon discovering the discrepancy, the Court essentially had to pause the trial and take the testimony of Ms. Troy – who had prepared the Mandarin translation – in order to understand why the versions differed....

Additionally, the Court raised important legal and evidentiary issues *sua sponte*, and expended its own time and effort to understand those issues because Plaintiffs had failed to raise or brief them. As just one example, both parties took testimony from several witnesses regarding how many meal breaks Plaintiffs had each day and whether Defendants had provided them with food during those

9

breaks, but Plaintiffs had made no argument that they were entitled to have a "meal credit" factored into their wages, or pointed to any other reason why this testimony regarding Plaintiffs' meals was legally relevant. Although this issue was raised by the Court with Plaintiffs' counsel early in the trial, counsel addressed it only in a post-trial brief, which was filed close to midnight the night before the day on which the Court had announced that it would make its findings of fact and conclusions of law on the record, and over a week after the trial had ended. … Id. at *4 (emphasis in original). The Court found that Troy "as the head of Troy Law" was the "attorney responsible for the conduct of the case," even though his associate did much of the work. Id. at *4-5. In fixing Troy's hourly rate, it noted a number of courts that had reduced Troy's requested rate "where Troy's performance at trial demonstrated a lack of skill and/or professionalism." Id. at *3. Lin provided quotations from other cases on this point: Hui Luo v. L & S Acupuncture, P.C., No. 14 Civ. 1003 (BMC), 2015 WL 1954468, at *2 (E.D.N.Y. Apr. 29, 2015) (noting that court could not justify a rate for Troy in excess of $300 per hour, where, *inter alia*, "[t]he trial was very rough in terms of demonstrating Mr. Troy's ability to formulate questions according to the rules of evidence"), aff'd, 649 F. App'x 1 (2d Cir. 2016); Shanfa Li [v. Chinatown Take-Out Inc.], 2019 WL 3715086, at *6 [(S.D.N.Y. Aug. 7, 2019)] (noting that "Mr. Troy's conduct during trial was lacking," and that he "repeatedly interrupted the Court, was disrespectful, and struggled to pose clear questions," warranting a reduction in his requested rate to $300/hour). Lin, 2020 WL 1819941 at *3. We note that this is but a sampling of cases where Troy or Troy Law's conduct has been found wanting. There are many other cases that have noted similar misconduct. See Bao Guo Zhang v. Shun Lee Palace Rest., Inc., 2021 WL 634717, at *18 (S.D.N.Y. Feb. 16, 2021) (finding that that Troy Law had asserted "meritless claims through its opposition to the settlements of [two individuals] and related motion for reconsideration" inasmuch as Troy Law "no longer represent[ed]" these individuals); Shiqiu Chen v. H.B. Rest. Grp., Inc., 2020 WL 115279, at *12 n.20 (S.D.N.Y. Jan. 9, 2020) (observing this was "yet another instance in which ... Troy Law PLLC has submitted conflicting sworn testimony" and that "[t]his course of conduct raises concerns about counsel's diligence in meeting ethical obligations to sufficiently investigate matters before they are filed and to guard against and take appropriate action with respect to submission of false testimony") (punctuation omitted); Feng Lin v. Quality Woods, Inc., 2019 WL 1450746, at *3-6 (E.D.N.Y. Jan. 28, 2019) (finding that service was not properly made on all defendants and observing that "[t]his is not the first time th[e] Court has raised serious questions about the submissions made by Troy") (citations omitted).

10

See Shi Ming Chen v Hunan Manor Enter., Inc., No. 17-CIV.-802 (GBD) (GWG), 2021 WL 2282642, at *4-7 (S.D.N.Y. Jun. 4, 2021). Defendants respectfully submit that Plaintiff's counsel's serious history of misconduct and demonstrated track record of sanctions must be considered by this Court in the context of this motion.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that should this Court issue an Order, pursuant to Rule 41, awarding attorneys' fees and costs to Defendants based on binding Second Circuit precedent, as well as a stay of the State Court Action until such time as Plaintiff complies with the aforesaid Order to pay attorneys' fees and costs.

Dated: Lake Success, New York
August 23, 2021

**MILMAN LABUDA LAW GROUP PLLC**

By: /s Emanuel Kataev, Esq._____
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Defendants*